Mr. Shah May it please the Court, Fadiq Shah for Plaintiff, Appellant, Indicon. This appeal involves a construction of two sets of claim language in Indicon's patent covering a computer-based indexing and hyperlinking computer system. I'd like to start by addressing the issue of whether the asserted claims require that all instances, as opposed to fewer than all instances, of a defined term in the database be capable of being hyperlinked. Importing the limitation from the preferred embodiments, the District Court answered yes, it must be all instances, each and every instance. But in conflict with established principles of claim differentiation, that construction equates the asserted claims use of the word instances unmodified with other unasserted claims that use the phrase all instances, which is the modifier that Facebook seeks to import into the asserted claims. Facebook's reliance on issue falls far short of the clear, deliberate, and unmistakable disavowal of claim scope necessary to overcome those claim differentiation principles. But that was a very strong argument. Was it not that there was really nothing in the specification, but there was the argument in the prosecution history concerning all instances? Well, Your Honor, in the prosecution history it is true there are statements in which Indicon is providing an overview of its invention. And it says that there are occasions in which it provides all instances of the link term. But I think it's important to remember a couple things when looking at that prosecution history. And that prosecution history appears at pages 1178 to 1186 of the joint appendix. So a couple things I'd say about that. First, there are certain claims in Indicon's invention, in which do actually require all instances. So when Indicon was providing an overview of its invention, it's not remarkable that it mentioned that limitation. But the key distinction that Indicon was making in the prosecution history was about another distinction over the prior art. The prior art that was being discussed in the prosecution histories was a source called folio views. The primary distinction, and this becomes clear when you read the thrust of those pages from 1178 to 1186, the thrust of Indicon's distinction was that folio views taught manual insertion of links, while the invention here, all of the claims, teach automatic generation of links. That was the primary distinction, not this all versus fewer than all distinction. The other point I would make, and if you look at page 1178, which is... Counselor, did the Your Honor, this comes out of the construction of a couple claim terms. I know, it comes out of link term and customs link, a customs link in relationship. Exactly, Your Honor, and the main dispute with regards to those set of terms, both before the magistrate judge and the district court, was whether those terms require just instances, as the claim language says. Just to be clear, the word instances, that's not included in the claim limitations, correct? It is. The word appears in the claim language itself, instances. So in claims two and nine, for example, Your Honor, of those asserted claims, it uses the term instances, and then claims 14 and 15, which are not at issue, uses specifically the language all instances. But getting back to the prosecution history that you asked about, Judge Newman, if you look at page 1178 of the Joint Appendix, and this is where Indicom's response to the patent examiner's objection based upon folio views starts. It starts with what it calls, quote, an overview and comparison of folio views with the product described in applicant specification. And then it says, quoting, the purpose of this section is to familiarize the examiner with the overall differences between folio views as described in the cited references and applicant's invention. Applicants, and this is the key sentence, applicants are mindful of the fact that differences between the disclosures of the two references does not necessarily shed any light on the scope of an applicant's claims. And then it says, the next section, in the next section, certain claim limitations are specifically identified in reference to specific claims in the next section. What that next section is, unfortunately it doesn't appear in the Joint Appendix. Facebook doesn't cite that next section. But if you look at that document, which you can see too, which is the next section where Indicom actually goes claim by claim in talking about the differences between folio views and its claims, when it gets to the point about folio views on which it's addressing, it's page 32, it says, the relevant claims, it cites the claim numbers, all recite structure or steps for automatically generating links. The cited references do not disclose equivalent structure for automatically generating links. That is the sum total of its explanation. It doesn't say anything about all instances or every instances, and there's good reason, because some of the claims that Indicom wrote and that were approved had instances and others had all instances. So I think when you read the prosecution history in its whole, it becomes clear as yes, it did say every instances in its general description of the invention, but when it got down to the nitty-gritty of describing the claims, the clear focus was between manual generation in folio views and automatic generation in Indicom's invention, which applies to all of the claims. And that certainly falls well short of clear, unmistakable, and deliberate disavowal of claims. As you well know, this court's precedents, Omega Engineering and others, when you're talking about prosecution history estoppel or claim disavowal, it has to be clear that the inventor is giving up that claim scope. If you read this prosecution history against folio views, I just don't think you can get there. And so that would be my response about the prosecution history. So it's your view that that prosecution history is publicly available, or we could probably get it anyway? Yes, Your Honor, it's available. I mean, I understand your position that they didn't cite it, but I'm surprised that you didn't if you thought it was the case. Yes, Your Honor, we should have cited that page as well. The document, the first page of the document, is on Appendix, Joint Appendix 1162. It goes through for the next six or so pages. We're happy to submit to the court, for the court's convenience, just the full document by letter after the argument. Yes, we have this rigid requirement, and in fact we do sometimes grumble when people cite or We'll be happy to send that along, and I apologize it wasn't in the Joint Appendix. Okay, I have another question for you, which is those dependent claims, like Dependent Claim 14, do you know when they were added? Your Honor, I don't know the precise point in the prosecution history that they were added. I would say, just to be fair to the other side, it's not a dependent claim. Those are independent claims. Oh, that's right. Claims 14 and 15. What I would say about that, now the other side, of course, makes the point that claim differentiation is stronger when you're talking about independent claims. Clearly it is stronger, but that doesn't mean claim differentiation principles don't apply across independent claims, and this court has a number of cases. I would focus on the Arlington Industries case, which I think is the most factually analogous to the set of claims we have here, and it's a case discussed on page five of our reply brief, and what you had there was a claim that involved, there was a claim language that said metal adapter. That was one independent claim, and the other independent claim said split metal adapter, and what the argument there was, well, all of the claims, the defendant in that case argued, well, all of the claims have to have the split metal adapter limitation, and it pointed to the in that patent showed a split metal adapter. There was an opening in the metal adapter. It wasn't a full circle, and what this court said is, well, look, we don't read claims like that. There's, when you have a modified claim language and then an unmodified claim language, you presume that the inventor is meant to add that modifier for a reason, and it would render superfluous the addition of that modifier if you were to give them the same scope. Well, but we have all seen that the unmodified claim is broader than what's supported in the specification, and that's the problem, is it not? Well, Your Honor, I would agree with you that that's true, but I don't think that you can say that this limitation is unsupported in the specification. To be sure, in most instances when you're doing a database, you would expect it to return sort of all links, and that's the, that's kind of the general understanding, but there's certainly situations, and it's not hard to imagine, that you would have situations where you would want a system to return something less than all links, and although it's in a slightly different context, the functionality should be exactly the same in the specification. The specification, in terms of search results, does allow specification to exclude certain search results, just like when you do in Westlaw and Lexis, you can specify, look, I don't want to return every instance of this term. If it appears, you know, in a way, the same sort of functionality is described in the specification with respect to searching. There's no reason why the hyperlinking, when you're setting up hyperlinks, should function in any different way. So I think there is support in the specification for the idea that you could, in fact, return something less than all instances, and we know that that's not a crazy idea, that's not just a hypothetical, because the accused device, in this very case, is a system where it doesn't return, as the party stipulated in the joint stipulation, it doesn't actually return every instance. So the fact, the inventors, there's no reason that the inventors would have want to given up the possibility that you could have certain databases, especially in the internet age, when there is sort of a stream of information, and sometimes the objective is not capturing every instance, but actually filtering out extraneous instances, that you would have a database system that would return fewer than all instances. You would have a system set up like that, and if you had a system that returned 99% of instances, but not 100% instances, there's no reason to assume the inventors would have wanted to give up the claim coverage over that other device. So I think there's enough in the specification, when you look at, when you start with the principles of claim differentiation, when you start with the claim language, and then you read it against the specification, I think there's enough there to give effect to the inventor's decision to use those different terms, the modifier and the unmodified phrase, and to give it real effect. Can I get back to my question when I asked you, when were those independent claims that talked about each instance, when they were added? They weren't original claims, right? Right, there was, I don't know the exact order of when they were added with respect to the other claims. What is clear from the prosecution history, however, was that the examiner never raised an objection based upon the absence or the introduction of the all instances versus the instances limitation. That simply was never a ground for coming back to the inventor and saying, no, we need to break a prescription problem or something like that. Right, so that much I think is clear and if we were to agree with the district on one construction but not another, what would be the result of that? So, if you were to agree on this claim construction on the instances versus all instances, and you disagreed with another, it would still require vacater and remand because they're certain of the asserted claims, for example, asserted claim 2, which doesn't contain the alias limitation. The converse is not true, though. If you agree with us on alias but disagree with us on this one, it would just be an affirmance because this instances versus all instance appears in all limitations. So, if we win on this claim, instances versus all instances, that requires a vacater and remand to the district court. Since you asked about it, I'll turn to the second issue, which is the alias, the construction of alias. And there, we think the magistrate judge got it exactly right. Now, again, importing limitations from the preferred embodiments, the district court construed alias to exclude graphics, any graphical element. But that limitation is not in the claim language, and as the magistrate judge explained, and this is on pages 19 to 21 of the magistrate judge's opinion, it contradicts the specifications description that the invention stores indexes and hyperlinks, both text and objects, and that an alias presents as a hyperlink. Now, the prior, and this is, I think, the important part, the prior art that's recited in the patent and discussed in the prosecution history, and I know there's an argument, oh, is this intrinsic or extrinsic evidence? But everyone agrees, if the prior art is actually discussed in the prosecution history, then it is intrinsic evidence. And if you look at page A1034 of the joint appendix, it is abundantly clear that the two most important patents, the De La Huerta and the Hobbs patent, were part of extensive discussion back and forth between the patent examiner and Indicon. And so when you look at those prior art patents, the De La Huerta and Hobbs patent, what you'll see is they make continuous discussion of hyperlinks, link terms, and pointers and targets, the very same terminology that the inventors used in the Indicon patent. They use them with respect to, equally with respect to text and graphics. So if we're using, if we keep in mind that the inventors used the very parlance of the cited patents that are part of the prosecution history, I think the default understanding should be that alias, which presents as a hyperlink, whether it's directly a hyperlink itself, as we would submit, or whether you accept Facebook's functionality is added. Either way, it presents in the invention as a hyperlink. And under the relevant prior art, hyperlink was always understood to be text and graphics, same thing with link term. And so when you when you read it against that, and you read it against the specification... What about the comments in the specification, like for example, there's one in column 10, there's a number of places in this specification where it suggests that the patents and the inventor did not have graphics in mind. And for example, if you look at column 10, lines 30 through 33, where it says, from a searchable database perspective, the crucial parts of the HTML composite file are those parts that contain text. So why doesn't something like that suggest that, you know, in the context of this invention, what was contemplated and thought about for terms was text? Well, Your Honor, it is true that large parts in the column that you're reading from is from one of the preferred embodiments, was primarily about text. But there are other points in the specification that I'll point you to that talk about the ability of the invention to store, index, and hyperlink graphics. And the first part I would point you to is column 5, which is not in the preferred embodiments. It's in the background of the invention. Column 5 lines 19 through 26. And it says, another object of the invention is to provide a method and system for storing search results from various sources, including the internet with internet format files, objects, or documents. The locally stored results can be automatically indexed for fast searching and hyperlinked by the user to make subsequent finding of the previously located information quick and simple. So it's talking about files, objects, and documents, not just text. And I think a more explicit description there would be in column, at the bottom of column 32 carrying over to column 33, if you look at the last two lines of column 32, it says a speed, and this is one of the preferred embodiments, it says a speed save button immediately saves the displayed document along with all of its pictures, graphics, images, hypertext links, and layout to the database name file. And then if you skip down to line 10, a few lines, it says the file can be saved as a normal text file, an HTML file without images, an HTML file with images linked to their internet source, or an HTM file with all images retrieved and saved on the local computer's hard drive. Pressing an exit browser button causes the software of the system to create a fully indexed and searchable database of all files saved into the database name. And so there in the preferred embodiment you have it specifically saying you can save every image retrieved and then it's a fully indexed searchable database of all files saved. So I think that language and specification supports the general understanding in the prior art and specifically in the patent cited in this very patent that hyperlinking technology and this sort of long-term database technology would include both text and graphics. Let's hear from the other side, Mr. Schauff. Thank you, Your Honor, and may it please the court, the District Court correctly construed the linking terms to require the capability to identify and display each instance of the linking term as a link. The judgment for Facebook should be affirmed for that reason alone. First of all, looking at the claim language, each of the asserted claims requires a custom link or custom linking relationship that links specified terms in a database to a specified file and further requires generation of a searchable index of the data contained in the database, including the custom linking terms or linking relationships, and that, therefore, since an index of the data would necessarily or at least logically include each iteration of the relevant term, the indexing function supports the conclusion of the District Court that the system must be capable of identifying and displaying each link term, each instance of the term, as a link and that's just inconsistent with an ordinary understanding of the claims. Counsel relies on the word instances, but as Judge Reyna's question suggested, the term instances was not actually construed. Indicon did not ask the court to construe the term instances, and that's probably because it doesn't actually even appear in four of the six asserted independent claims. Only claims two and nine even use the word, although both parties in their proposed constructions use the word. It doesn't actually appear in four of the six and the fundamental starting point for construing this patent is to recognize that it is undisputed. Facebook made this point below and in our brief here, and it was not disputed by Indicon, that these terms are coined terms. The linking relationship and so forth terms are coined terms. They do not have an ordinary and customary meaning in the prior art, and therefore, under this court's precedence, in cases like J.T. Eaton and Urdetto and Honeywell, it is the court to define the coined terms in the specification so that the person of ordinary skill knows what they mean. So you look to the specification to see how those terms are used, and either explicitly or impliedly defined, and they cannot be construed to be broader than their usage in the specification. And here, the specification makes very clear that the system provides and contemplates that these terms convey the capability to display and identify each instance as a link, which of course is consistent with how one would normally expect the system to work. Essentially, this was along the lines of a Westlaw or Nexus system, and if you think about Westlaw, when you look at a Westlaw file and there's a site like 28 USC 1338, it's hyperlinked, and you can click on that and go look at the statute if you want to see what the statute actually says. And if every iteration is that way, because otherwise it would be pointless, because when you needed it in the paragraph you were looking at, it might not be there. How do you respond to the position that that part of the specification that you're talking about is simply the preferred embodiment? And what's happening here is that the district court read something from the preferred embodiment into the claim. Why is it that there was a disclaimer or something else here, something that should be read into that, particularly where there is a claim that says instance and other claims that say every instance? So several responses. First of all, remember the construction is not each and every. The construction is each must be capable, and that's an important threshold. And I think Indicon sometimes misconstrues the construction by suggesting that it always, that the construction of the assertive claims always requires that all of the linked terms actually be displayed as a link. That's not what the construction says. It's only that the system allows the user, allows each link term to be displayed as a link. So it provides the capability, not the actuality, which is one of the distinctions between the assertive claims and claims 14 and 15, which they argue for claim differentiation purposes. Those claims automatically generate all of the links. So they require all of the links to be automatically generated. The other claims merely require the capability, which of course is a distinction between capability and in and of itself is sufficient to defeat the claim differentiation argument. But turning back to the specification, even within the specification there are two, I think, principal responses to your question. The first one is the point I already made about coined terms. The normal rule is when a term has a customary and ordinary meaning, a claim term, you can't then, you don't look to an embodiment and then limit the meaning of the ordinary, narrow the meaning of the ordinary and customary meaning. But here that rule doesn't apply because there is no ordinary and customary meaning. That's undisputed for these terms. These are coined terms. And so again, under Urdetto and J.T. Eaton and Honeywell, this court has repeatedly said the applicant, when it's a coined term, needs to define in the spec. And we have to look to the spec to see what they meant. Because that's what a person of ordinary skill would do. They can't just consult customary meaning because it doesn't have one. So we have to look to the spec. And in those circumstances, whenever usage in the spec shows what the term means, and it's consistently and unambiguously used to mean, as in this case, each instance is capable of being displayed as a link, the spec controls. And that's even before we get to the prosecution history, of course, which provides a completely independent and sufficient and compelling ground for reaching the same conclusion. But even beyond all that, if you actually look at the spec, even under this court's normal principles that don't apply here because these are coined terms, if you look at the spec, the description, the summary of the invention before we get to the preferred embodiments, the summary of the invention itself, again, supports this interpretation. And I would refer the court to columns five and six. And specifically, column five, lines 62 to 63, the link module, which is one of the required portions of the invention according to the summary of the invention, the link module enables association of any selected link term with any of the plurality of files. If the invention must be capable of associating any link term, it must, therefore, provide the capability to associate each link term, because otherwise, any doesn't include each. And any obviously must include each. Then again, the construction does not say for the asserted claims that they must always do it. It only says they have to  And similarly, column six, lines 23 to 26, any selected link terms defined by the link module are also indicated in a similar manner, that is, being graphically indicated in some fashion, color style highlighting, and the display utility enables interaction with any indicated selected link terms to enable perusal of linked files. So again, any term can be linked, therefore, each instance of the term can be linked. And again, the actual, then again, because this is a coin term, it's entirely appropriate to look at the embodiments to see if they ever describe an embodiment that broadens the meaning beyond each instance, and they never do. In fact, if you look at the embodiments, and we've just edited these in our brief, but just to go through them very briefly, they say that the link term can be displayed as a link, quote, when a link term is encountered in a file, column 11, lines 29 to 32, quote, when the specified word is encountered, column 25, lines 3 to 4, quote, whenever a user encounters the link word, column 30, lines 34 to 39, quote, whenever the term appears, column 32, lines 24 to 29, quote, all such words should link, column 30, lines 22 to 26, every single time. And then, if you go to figure 11, it says that the linking function, this is describing the linking function, the linking designation process, it associates any word with a file by clicking on the link word in any file, you can then see the file. So again, over and over and over again, consistently, the description of the invention and the specification, which is controlling here, because these are coin terms, makes clear that the system is capable of displaying any instance each instance of the link word as a link. How do you respond to Indikon's argument about the prosecution history that, that first you've got, what we've got in the appendix here is something that generally compares the prior art to the specification. And then what we're missing is something that more directly says, it's these various differences that we've pointed out on the prior page relates to these different claims. How do you respond to Indikon's argument that we can't really rely on that as a clear and unambiguous disclaimer, because it's not directly linked to the particular claims at issue here? It's wrong for several reasons. First of all, this court in the Microsoft against Multitech case, and in the Hill-Rom case, which we've cited in our briefs, makes very clear that a clear case, perhaps the clearest case, but certainly a compelling case for disclaimer in prosecution history is when the patentee says, or when the applicant says, applicant's invention. When they say the invention has the following characteristics, Hill-Rom and Multitech say, that is taken as a disclaimer because the public is entitled to rely on the applicant's description of his or her invention and can't get broader scope than the patentee has said what the invention is. And here, the applicant in the prosecution history at issue repeatedly and consistently was describing, quote, more compelling than a description in the context of a particular claim, because it's not limited to a particular claim. It's a description of the invention. And let me remind the court... We do have other cases, though, that where the prosecution history stop was limited based on which precise claims were being discussed. I agree with you. I just think there's probably cases that go both way. But do you agree, is there anything that somehow links this particular argument to the claims at issue here? I'm not familiar on it, but certainly they haven't cited any case that says you have to have, it has to be the claim by claim analysis. Indeed, I think, if I recall correctly, in Microsoft against Multitech, this same point was discussed. And the point was it wasn't a claim by claim analysis. It was the general description of the invention. And that's exactly what we have here. On 1182 to 1183, they say it five times. Applicant's invention provides a user with a linking control panel in which the user can designate a specific file to be linked with every instance of a specified word. And the program displays every instance of that custom term and its alias terms, if any, as a hyperlink. Applicant's invention enables a user to designate the pattern and cause the program to display each instance of a text string. These innovations distinguish applicant's invention from folio views. And then again, on 1186, applicant's invention enables a user to associate all instances of a specified word and all instances of a specified pattern. They say it five times, each time saying, applicant's invention, applicant's invention, applicant's invention. That's a clear disclaimer under this court's precedence. And I don't think Indicon, I'm not aware of any case they say, it says when an applicant says applicant's invention is X five times, we can nonetheless broaden the scope beyond what they've clearly said and what a person of ordinary skill reading the file wrapper would conclude it means. And in addition, if you're looking at the prosecution history, they also say on 1182, applicant's invention provides a linking control panel illustrated in figure 11 and pages 70 to 72 of applicant's specification. And figure 11, I already mentioned, makes clear that the capability to display any linked term as a link is part of the invention. Pages 70 to 72 of applicant's specification is part of the joint appendix. And they make clear, page 70 is actually column 30 of the specification, which is the one I previously read to the court, which says, which uses the phrase, whenever a user encounters the linked word. So again, in the prosecution history, they specifically referred and relied on the very language that we have pointed out compels the construction adopted by the district court, in addition to reiterating in the prosecution history, the same point explicitly. So it all ties together. It's very clear and unambiguous. I don't see how any person of ordinary skill reviewing the prosecution history and the specification in light of the claims and construing them in light of the full information provided in the intrinsic record could possibly be confused about the scope of this invention. And it makes perfect sense, again, that why would you not want to have the capability when the purpose of the system is to provide a searchable index and allow people to connect to the dots, and when they see a term, if there's some related information they might want to be able to look at, why would you not want to have the capability to provide that linking relationship? It makes no sense. And there's not a hint of a suggestion of a specification why somebody would want to have, given the purpose of the invention, there's no suggestion why anybody would want to be denied the capability to do that. And with respect to claim differentiation, first of all, Indicon concedes that at most what we're talking about here is the weak form, not the strong form, because the claims 14 and 15 are independent claims. But secondly, they don't concede this, but it's true, not even the weak form of claim differentiation applies here, because the presumption that forms the basis and defines the concept of claim differentiation is the presumption that claims are intended to have different scope and should therefore not be construed to be redundant or superfluous, absent some reason otherwise in the specification or the prosecution history. But that's not even applicable here. We identified 10 differences between the claims, claims 2 and 9 on the one hand and 14 and 15 on the other hand, in our brief at 31 to 32. Indicon disputes only one of them, and that one unpersuasively. But it's undisputed that the claims have different scope, even under the district court's interpretation. So claim differentiation, even the weak form, doesn't apply here. Moreover, this court has repeatedly held in Fenner and other cases cited in our briefs that the guidance from the specification, when it's clear as it is here, and the guidance from the prosecution history, when it's clear as it is here, overcome claim differentiation, even in its strong form, let alone its weak form, or as here where it doesn't apply at all. So for all those reasons, the district court's construction, we submit, was clearly correct and should be affirmed. I'm happy to address the alias terms issue if the court would like. Yes, take a moment. We have, we've run over on the other side. Thank you, Your Honor. So first of all, Indicon concedes that alias and alias term are used interchangeably in this patent. They say that at footnote three of their brief, and it's undisputed. So they must be given the same meaning. The patent makes very clear that the word term is given its ordinary meaning in this patent as a textual expression. Indeed, the claims require that, because claims 8, 9, and 11 equate the term with the phrase, quote, words and phrases, close quote. They say, part of what's required in each of those claims is you locate words and phrases, and then you highlight those located terms. So the patent claims themselves make clear that terms are words and phrases, textual expressions. The summary at column six, lines 27 to 28 equates link term with a term. And of course, the specification actually defines the word term as, quote, i.e., words, numbers, spaces, et cetera, at column 12, lines 55. Counselor, Indicom indicates in its brief at page 35, says a district court did not dispute that an alias functions as a hyperlink, and that hyperlinks were known in the art to be both textual and graphical. Is that correct? The second part is true. Certainly, it was known in the art that a hypertext link could be attached to, the jumping off point for a hypertext link could be an image or a text. That was clearly known in the art. The core issue here, and the one that we think Indicom is clearly mistaken on, is they try to say alias means hypertext link. And that's just not true. An alias term are terms, just like link term is a term. They're words, according to the patent, that are found in the database. And then they serve as the jumping off point for a link. And the patent claims themselves make this clear by repeatedly saying that the link term or the alias, sorry, that the linking relationship can be created and defined between the link term or the alias term and the file. So there's the link term or alias term on the one hand, there's the file on the other hand, and there's the linking relationship between them. So those are three different things, obviously associated, but distinct. And indeed, in the patent, if you look at figure 11, and columns 30 to 31, they go through in detail describing how first you define, you determine what your link term or link phrase is going to be. And then you press a button and the system generates the links. So the links and the link term are two different things. And similarly, the links and the alias term in both the patent's claims and in the specification. And so the predicate, the first step of their argument, which entails assuming that alias means hypertext link, is not correct under the language of the patent. And secondly, even if it were, which it isn't, it wouldn't make any difference because just because a hypertext link can be associated with an image as well as text, that doesn't mean that the predicate for the hypertext text link itself must always be image as opposed to text. You can certainly have text that serves as a hypertext link, as indeed is the case here. And there's nothing in the patent that provides any suggestion that the predicate for the link is itself an image, or that text must be given a meaning contrary to its ordinary meaning. And again, this is where the doctrines that this court normally applies, that is, we're not going to depart from the ordinary and customary meaning of a word unless there's clear evidence to the contrary in the specification or the prosecution history. This is where that doctrine applies. They would have to satisfy the lexicography standard in order to give alias term a meaning other than the ordinary meaning of term, which is textual expression. And far from being able to satisfy the lexicography standard, the specification actually defines term in accordance with its ordinary meaning, which is textual expression. And then finally, the searching and indexing function description in the patent likewise confirms that images are not to be equated with aliases or with link terms, because the patent makes clear that alias terms need to be searchable and indexed in the searchable index, and that the indexing process, according to the patent, quote, discards images, that's column 22, lines 63 to 65, and it focuses on, quote, visible characters, that's column 23, lines 46 to 48. And then they give a reason. They give a reason why the indexing process discards images. And the reason is this, quote, from a searchable database perspective, the crucial parts of the file are those that contain text. That's column 10, lines 30 to 33. So it makes perfect sense. There's not a shred of a suggestion anywhere in the patent that they are claiming a method for indexing and searching images. And interestingly, in their reply brief, Indicon says, oh, well, but that's commonly understood, because two and a half years later, in 2001, they cite something that's not even in the record. Google announced the ability to search images. Well, this patent was filed in the beginning of 1999. There's no enablement, no description of any ability to search images. The only thing, it talks about images as being in the files that are in the database. Of course, that's not surprising, but it never gives any suggestion of any ability to index and search images, let alone treat them as aliases. And again, in order to construe the term term to mean something other than its ordinary meaning, you would need clear indications in the specification or the prosecution history, and none of that is present here. Do you happen to know when those claims that talked about each and every instance were added to the prosecution history, added to the specification? I wouldn't expect you to know, but do you happen to know? So this argument was not made, of course, and so I have not examined it, but I just, in the course of this morning, when you asked the question, I looked through the information that I had. So this is what I know. Again, I don't know more than what I'm saying, so please don't take me as saying more than I am, but it appears from page 1428 of the Joint Appendix that claims 14 and 15 resulted from claims 110 and 111 of the application. Okay. Okay. And then from page 1178 of the Joint Appendix, it appears that claims 78 through 115, which would therefore include 110 and 111, were added as part of the very submission that we rely on as the prosecution history. That's 1178 is where they say we added 78 to 115, and then they go on later in that very same document to say our invention, applicants' invention entails the ability to display every instance of the link term as a link. That's what they say five times in the pages that we've cited. So again, I haven't done any sort of analysis beyond that because it wasn't argued and therefore is waived, but certainly that's entirely consistent with the point that the applicants were quite unambiguously disclaiming, even if the specification had not been so clear, they were quite unambiguously disclaiming any attempt to claim an invention that doesn't convey the capability to display each instance as a link. Okay. Any more questions? Okay. Thank you, Mr. Hunger. Thank you. And let's enlarge the rebuttal time since we've run over. Let's make it five minutes. Thank you, Your Honor. I'd just like to make three points, if I may. The first is the issue of coined terms. Opposing counsel talks about how because these aren't defined terms of art, you have to look at the specification to coin the term, but we do have prior art in this case that's in fact cited on the face of the patent, that's in fact discussed back and forth in the prosecution history as shown in the office examination on page A1034 of the appendix, and those two patents are, importantly, the de la Huerta patent and the Hobbs patent. Those two patents use the terms that are used in this invention. They use the term link term, that's the Hobbs patent, and they use the term hyperlinks. That's the de la Huerta patent. In those prior art patents that are cited in this patent, and the inventors here borrowed that terminology, they use the same terminologies, there can be no dispute that hypertext link and link term refer to both graphics and links. So if we're talking about coined terms, you should look at the actual coined terminology that they're using. You don't have to limit yourself to dictionary definitions, which Facebook cites in its briefs, or language from the preferred embodiments. You can look at those patents which are intrinsic evidence. The term graphic was also well known at that time. Why wasn't that used in the patent? Well, your honor, there is in the specification. It certainly talks about graphics. In the claims? In the claims, no, your honor, but that's because it uses terms that were meant to encompass, but it doesn't also just say text. It was meant to encompass both text and graphics, and so I think that's probably the best reading. If you look at the fact that the inventors were using terminology well known in the art to encompass both text and graphics, they shouldn't also have to repeat it in the claims itself. So that would be our response on the coined terms argument. The second point I would mention briefly is the fact that claims 14 and 15 are independent claims, are clearly independent claims, and all independent claims have different scopes than other independent claims. Otherwise, they wouldn't be independent claims. But the key point is, under Facebook's reading, the word all would be completely superfluous. They would give the exact same construction to the claim and independent claims 14 and 15. Actually, they say, no, it's not the same, because the district court added the word capability, right? Well, your honor, no. In their view, and I don't want to speak, but words in their mouth, but if you read claims 14 and 15 and you take out the word all, in their view, it would read exactly the same. It would not change the interpretation of how those claims operate. That's the definition of rendering the word superfluous. It would read exactly the same in their view. Automatic generation of instances. I thought that what they were saying, and I could be wrong, but I thought that I heard them say is that without all, it would merely require capability. In addition to the word all, it requires that you actually link in each instance. I don't think that that, that's not my understanding. I think they rely on the word automatic generation for that instances wouldn't change the construction of claims 14, 15. They rely on automatic, but it's not disputed amongst any of the parties that the generation of links across all of these claims is, in fact, automatically done, whether it's all or 99% of the links and not all the links. The last point I would make is coming back to the prosecution history, which, of course, will submit the full document. And I think it's just best for the court to read that full document and come to its judgment. But I would just say a couple of things about the prosecution history. Again, if you look on 1178, when you're talking about prosecution history estoppel, you're talking about clear, unmistakable, and deliberate disavowals of claims scope. That's the standard. Here, it cuts exactly the opposite way when it says applicants be mindful, or I mean office be mindful in this preliminary discussion. We are mindful of the fact that the differences between the disclosure of the two references does not necessarily shed any light on the scope of applicants' claims. So it's, in fact, saying, it's putting the caveat. So when you're talking about clear, unmistakable disavowals, you first have to read it against that caveat in this section. Then even if we do look at that preliminary section, which is talking about the invention writ large, which included some claims that required each and every instance and others that did not, if you look at it. This is supposed to be a rebuttal. And I think you're arguing some new points that we haven't considered. We might hear from Mr. Hunger if you need to continue. Is this? Oh, I just meant to respond to his reliance on the same page of the prosecution history estoppel. That was the only point. But I have nothing further, unless this court has any questions. OK. OK. I think we have it under as well in mind as we might. Thank you both. The case is taken under submission.